Tucker, P.
This is a case of prospective emancipation by will, and presents some of the difficulties which have resulted from construing the statute to au *280 thorize the gift ¿of freedom in futuro. Such, I am persuaded, never was its design, and such an.effect is"'at variance with every principle. For, in the nature of act, emancipation is immediate, not prospective. If the act be not executed, but executory, it is but a contract for freedom between the master and .slave, which is void. If, on the other hand, the act be considered as executed, it must take effect immediately, and intermediate servitude is incompatible with it. The act of assembly seems distinctly to recognize the principle ; for in giving the power to emancipate by deed or will, it declares that the slave “ shall thereupon” (that is, upon the probat of a deed or will of emancipation) “ be entirely and fully discharged from the performance of any contract entered into during servitude, and enjoy as full freedom as if he had been particularly named and freed by this act.” 1 Rev. Code, ch. 111. § 53. p. 433. It is not easy to p'erceive how, under this clause, emancipations in futuro could have been countenanced; yet they have been so long recognized, that it is only left for us to follow the steps of those who have gone before us, until a change is effected by legislative power; and the subject is only mentioned here, as affording a motive for limiting ourselves at least to the strictest rule which former decisions will permit.
According to my construction of the will in the case before us, all the testator’s slaves in existence at his death, and all the issue of his female slaves, born during the life of the widow, were emancipated by the operation of the clause declaring that all the testator’s slaves should have their freedom after the death or marriage of his wife. For the afterborn slaves, if born in the widow’s lifetime, were, according to the decisions of this court, as much the testator’s property, and as much subject to his disposition, as those in existence at his death. Accordingly they passed, as fast as they came into being, to the widow during her life, under *281 the bequest to her of all his slaves. It cannot be de1 nied that she had a life estate in the posthumous children, who, but for this clause in the will, would have fallen into the residuum for division among the distributees. If the posthumous children are embraced by the words “ all my negroes” in the bequest to his wife, they are equally embraced by the same words in the clause of emancipation, and hence all born during the tvidow’s life and after the death of the testator, were free after the death of the widow and their arrival at age. If Moses was in this predicament, he was therefore free.
It seems to have been supposed that the particular provision for those born hereafter,” excluded them from the operation of the general clause above mentioned. If so, the case would not be materially varied. The children born during the wife’s life were, as has been already said, subject to the testator’s disposition, and were given to the wife during her life or widowhood. Their freedom, then, was subordinate to this gift; for we cannot suppose for a moment that he intended freedom, before her death, to the posthumous, more than to those in existence at the date of the will. The will, as to them, must therefore be read thus: “ And if any should be born hereafter, they shall have a right to freedom, after the death or marriage of my wife, upon their attaining the age of 21 years.” Now this language can only apply to those born during the widow’s life; it is inappropriate to those born after her death or marriage; for as their right to freedom is postponed until the death or marriage, their preexistence during her life is inevitably implied. If this be so, we must still further mould the expression, so as to read it thus : “ And if any should be born hereafter during the life and widowhood of my wife, they shall have a right &c.” Thus construed, it is clear that Moses is free if he was born during the life or widowhood of the wife; *282 and if not born until after her death, he is a slave, as he is in that event within neither clause of the will. There must then be a venire de novo to ascertain this fact, unless the parties will agree it in this court.
After this opinion was prepared, an order was made, by the consent in writing of the parties by their counsel, that the record be amended so as to supply the defect in the special verdict, by admitting the fact that Moses was born after the death of mrs. Lucy Johnson, the widow of James Johnson.
Stanard, J.
The special verdict, on which the questions involved in this case arise, was defective in not ascertaining whether or no the birth of Moses (the plaintiff in the court below) was before or after the death or marriage of mrs. Johnson the relict of the testator. That defect has been cured by the admission on behalf of the pauper, that he was born after the death of mrs. Johnson. If, then, on the just construction of the will, none can claim title to freedom, as derived immediately from the dispositions therein, but those born before the death of mrs. Johnson, the right of Moses is that only which he could derive from his mother; she being one of those who the will directs shall have their freedom at the age of 21, and he being born before she attained that age.
My opinion is that a just construction of the will gives it the same meaning that would be distinctly expressed had the clause been framed thus—“ After the death or marriage of my wife, all my negroes then living, as well thoge that shall be born hereafter as those now in being, shall have a right to their freedom ; those aged 21 years and upwards, immediately,* and those under that age, when they attain it.” The slaves living at the death or marriage of the widow were within the immediate scope of the will, and entitled to claim *283 their freedom under it. The testator obviously apprehended that the first member of the clause of the will giving freedom to all his slaves after the death or marriage of his wife, might be interpreted as applicable and restricted to the slaves he possessed at the date of his will, or at his death. This apprehension caused him to add the second member; and its function being to supply the supposed defect of the first, it should have a corresponding interpretation. According to the decision of this court in the case of Erskine v. Henry & ux. 9 Leigh 188. the first member of the clause would have comprehended afterborn slaves; and for that purpose the second was superfluous. But this in no wise weakens the suggestion that this testator apprehended it was not sufficiently explicit, and added the second member to remove all doubt as to his purpose to comprehend all that might be living, either at his death, or the death or marriage of his widow. The result is, that on the just construction of the will, those slaves that were living at the death or marriage of the wife derived their title to freedom directly from the will, and those born afterwards must derive their title from their mothers. This is the construction contended for by the counsel of the pauper; arid as Moses was bom after the death of the widow, and before his mother attained the age of 21, the counsel has attempted to distinguish this from the case of Maria &c. v. Surbaugh, by treating the postponement of the emancipation of the mother to the age of 21, as a retention of service in the nature of an apprenticeship—as temporary service which would not affect the offspring born during that time. The distinction cannot, in my opinion, be sustained. Though my judgment has never been convinced of the correctness of the decision in the case of Maria &c. v. Surbaugh, I feel judicially bound by its authority; and under that obligation I must decide that Moses, being born before his mother’s right to freedom *284 was consummated by the attainment of the age of 21, . -i is a slave.
I forbear to express an opinion, or even to enter into the investigation of the question so much and so ably discussed by the counsel of the appellant, as to the validity of the will, had its construction been such as to provide for the emancipation of slaves at a period more remote than the law allows for an executory devise or bequest of property. The inclination of my mind is against the application of that rule respecting the limitation of property, to cases in which property is riot fettered, but renounced; in which property is not granted, but extinguished. The case of Maria &c. v. Surbaugh rests mainly on the proposition, that by emancipation, property is not granted, and the right of one to prospective emancipation is not a right to property, or analogous to, or having the incidents of such a right. But I have formed no definitive opinion on the question, and therefore give none.
Judgment reversed. And this court, proceeding &c. is of opinion that the matters of law arising upon the special verdict found by the jury are for the said James Crawford, the plaintiff in this court: therefore it is considered that the said Moses, the defendant here, take nothing by his bill, &c.